**ADAM J. FISHBEIN, P.C.**
ATTORNEY AT LAW

483 Chestnut Street
Cedarhurst, New York 11516

Telephone (516) 791-4400
Telecopier (516) 791-4411

August 5, 2015

**VIA ECF**
The Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:   Lezell et al v. USAA Savings Bank et al
       14 CV 5483 (FB)

Dear Judge Block:

I represent the plaintiffs in the above referenced matter. This matter was filed pursuant to the Telephone Consumer Protection Act as a putative class action suit. The Court has scheduled a hearing concerning defendant's motion to compel arbitration on September 4, 2015. The Court ordered the plaintiffs to inform the Court two weeks in advance as to whether they intend to proceed with the hearing. For the following reasons, the plaintiffs intend to proceed with the hearing, and request that the Court adjourn the hearing until the end of November, 2015.

Subsequent to the pre-motion conference before Your Honor and a status conference directly thereafter with Magistrate Judge Pohorelsky, the plaintiffs made a motion before Magistrate Judge Pohorelsky for leave to conduct discovery for the hearing before Your Honor. Magistrate Judge Pohorelsky granted plaintiffs' request on July 21, 2015 after defendant having informed the Magistrate Judge that they did not oppose plaintiffs' application. In order to be adequately prepared for the hearing, the plaintiffs must engage in discovery.

The Second Circuit is clear that compelling arbitration is an issue of fact. See Filho v. Safra Nat'l Bank, 489 Fed. Appx. 483, 2012 U.S. App. LEXIS 15309, 2012 WL 3023805 (2d Cir. N.Y. 2012) (The terms and conditions of the banking relationship that the account holder entered into when he opened an account at the bank in 2002 were embodied in a document that did not contain a provision requiring arbitration. However, the document did contain a paragraph that authorized the bank to unilaterally change the terms of the agreement. A bank form reflecting terms imposed in or about 2005 did contain an arbitration provision. The court held that a party could be compelled to arbitrate a dispute only if he had agreed to arbitration. A trial was necessary because the account holder never received actual notice of the bank's imposition of the new arbitration requirement, and the record provided inadequate support for the conclusion that the bank constructively delivered the new bank form to the account holder

1

via his held mail. The record contained no correspondence or mailing list demonstrating that the new bank form containing the arbitration provision was mailed to customers. Therefore, the account holder had raised genuine questions of fact as to whether he could properly be deemed to have agreed to arbitrate his dispute with the bank.)[1]

The Second Circuit has declined to compel arbitration where the moving party submitted far more compelling evidence of an agreement to arbitrate than Defendants have submitted here. In Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 371-72 (2d Cir. 2003), the Second Circuit denied the motion to compel arbitration where both parties signed documents agreeing to arbitration but never signed the same document containing a complete list of agreed upon arbitration procedures. Similarly, in Dreyfuss v. eTelecare Global Solutions-U.S. Inc., 349 F. App'x 551 (2d Cir. 2009), the party seeking arbitration produced a copy of the first and last page of a signed arbitration agreement but was unable to produce the pages in between. Id. at 552-53. Despite evidence that both parties manifested an intention to arbitrate, the Second Circuit held that, "even if a contract did exist in this case, the agreement is not enforceable because . . . the party seeking enforcement . . . has failed to prove its terms." Id. at 555.

In Hirsch v. Citibank, N.A., 542 F. App'x 35, 37 (2d Cir. 2013) the court noted that: "[w]hile it is true that a party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing, . . . an exception to this general rule exists when the writing does not appear to be a contract and the terms are not called to the attention of the recipient. In such a case no contract is formed with respect to the undisclosed term." Id. (internal alterations and quotation marks omitted) (omission in original). If our Court highlights issues that need to be resolved and remands so that the district court may consider such issues, it is to be expected that those issues will be the focus of the district court's attention."

In Ross v. Am. Exp. Co. (In re Currency Conversion Fee Antitrust Litig.), 2005 U.S. Dist. EXIS 21084, 2005-2 Trade Cas. (CCH) P74,973 (S.D.N.Y. Sept. 27, 2005) Reconsideration denied by Ross v. Am. Express Co. (In re Currency Conversion Fee Antitrust Litig.), 2006 U.S. Dist. LEXIS 67358 (S.D.N.Y., Sept. 21, 2006) rev'd on other grounds, 547 F.3d 137 (2d Cir. 2007) (The Court denied defendant's motion to compel arbitration due to a "genuine issue of fact concerning the validity" of the arbitration clause plaintiff's claimed that the big banks inserted compulsory arbitration clauses in its cardholder agreements, intended to suppress competition and deprive their cardholders of a meaningful choice concerning the arbitration of disputes, that the underlying clauses are invalid because they are unconscionable, contracts of adhesion and they were collusively imposed in violation of the Sherman Act in addition to challenges that the arbitration clause itself as an adhesion clause, the product of collusion and something that is unenforceable, which was the product of an unlawful conspiracy and are entitled to a trial on this issue which is squarely at issue before it could be

---

[1] The Third Circuit has refused to enforce an arbitration clause in a law firm's bylaws against a shareholder, when the attorney was not aware of the arbitration clause prior to filing her case. Kirleis v. Dickie, McCamey & Chilcote, Prof'l Corp., 560 F.3d 156 (3d Cir. 2009). The firm argued that the lawyer's status as a shareholder charged her with "constructive knowledge" of the terms of the firm's bylaws, but presented no evidence contradicting her sworn statement that she had never been provided with a copy of the bylaws or agreed to arbitration. Id. at 161–162. The court concluded that the mere fact of her status within the firm did not demonstrate that she had proper notice or assented to arbitration. Id. at 162–162. In the case at bar, the plaintiffs are not attorneys but consumers.

sent to arbitration. These banks also drew upon their collective market power . . . to develop, hone and implement their compulsory arbitration clauses. Thus, the Court concluded that genuine issues concerning the legality of the arbitration clauses exist. The plaintiffs were entitled to jury trial of all "issues relating to the making of any arbitration agreement sought to be enforced or invoked in the matter." Since Section 4 of the FAA requires a jury trial when the validity of an arbitration clause is in issue, Defendants' motion to compel arbitration and dismiss or stay this proceeding was denied. 9 U.S.C. § 4. The Court concluded that Plaintiffs have raised a genuine issue of fact concerning the validity of the arbitration clauses whether the clauses were imposed pursuant to an illegal antitrust conspiracy which must be resolved by a trial.)

In Hinten v. Midland Funding, L.L.C., 2013 WL 5739035 (E.D. Mo. Oct. 22, 2013). (On the defendant debt buyer's motion to compel arbitration, the court found that the defendant "failed to establish that the proffered credit agreements are the agreements that apply to plaintiffs, and therefore, excludes the credit agreements for failure to authenticate." Where the defendant offered no other evidentiary support of an agreement committing the plaintiffs' claims to arbitration, the defendant's motion to compel arbitration was denied.)

These cases make it imperative that plaintiffs engage in thorough discovery to determine whether the plaintiffs actually and meaningfully agreed to an arbitration clause, if any, and whether USAA improperly imposed the terms upon the plaintiffs as part of an illegal antitrust conspiracy. It is clear that there are many factors and factual circumstances which the courts have considered and based upon such information and factors, have denied virtually countless motions to compel arbitration.

In the within matter, as defendant pointed out at the pre-motion conference before Your Honor, defendant provided to the undersigned an undated purported sample agreement which contains two parts. The initial agreement contains about twenty-five numbered pages with a table of contents. There is some mention of arbitration but there is not reference to any other agreement which sets forth a more detailed representation of the terms of arbitration. I also received an unsigned, generic, and undated USAA Credit Card Agreement Pricing Addendum which does not contain numbered pages. At this point we do not know if the two documents were transmitted to the plaintiffs at the same time or at different times or if at all. In the email from defendant's counsel, below the Pricing Addendum is a USAA Credit Card Agreement Arbitration Addendum which seems to be contained as a document subsequent to the Pricing Addendum. As stated, the Arbitration Addendum is not referenced in the main agreement.

In 2014, the West Virginia Supreme Court of Appeals concluded that a consumer had not agreed to an arbitration clause found in a separate document when the contract had referred to an addendum, but did not identify the arbitration clause explicitly and the addendum was delivered in hard copy in a nondescript envelope. West Virginia *ex rel.* U-Haul Co. of W. Va. v. Zakaib, 752 S.E.2d 586, 598 (W. Va. 2013). A Louisiana appeals court held that a trial court had erred by confirming an arbitration award against a consumer, when the creditor had submitted only an "unsigned and undated generic 'Cardmember Agreement' that included a section titled 'Arbitration Agreement.'" Chase Bank USA v. Leggio, 997 So. 2d 887, 890 (La. Ct. App. 2008). The court held that in light of the creditor's failure to introduce into evidence the actual agreement purportedly sent to the debtor, combined with the debtor's sworn testimony that he had not agreed to arbitration, there was insufficient evidence that the cardholder had received notice of the arbitration clause. Discovery will be needed to determine

3

exactly how and when each document was transmitted to the plaintiffs, if at all.[2]

The Southern District of New York recently concluded that bank customers were not on inquiry notice of a "client manual" that the court found was never actually provided to them. That the clients signed "signature cards" referring to "terms designated" and "an agreement" was not sufficient to place them on inquiry notice of a separate document containing an arbitration clause. Hirsch v. Citibank, 2014 WL 2745187 (S.D.N.Y. June 10, 2014).

Plaintiff will be propounding written discovery and a number of deposition notices upon the defendants.

Therefore, plaintiffs respectfully request that the Court adjourn the hearing until the end of November, 2015 so the plaintiffs can adequately prepare for same.

Yours faithfully,

/s/
Adam J. Fishbein

cc:     Charles Breslauer, Esq.

---

[2] In the age of e-mail and the Internet, the mechanisms of contract delivery have become increasingly varied, and courts will probe the factual circumstances at issue on a case-by-case basis to determine whether a reasonable person should have been on notice of the arbitration clause. But a court should never compel arbitration in a case in which the arbitration clause was not itself easily available to the plaintiff. For example, recently, a court addressed a situation in which an employee had received physical copies of a newsletter and an acknowledgment form that she was asked to sign. The newsletter referred employees to a handbook available in a manager's office, and the arbitration provision at issue appeared in that handbook. The court denied arbitration, explaining:

> To receive a communication of a specific offer here, the employee has to seek it out. The employee has to think—during work—either immediately upon reading the newsletter or the Acknowledgment Form, or later, spontaneously, "Should I look up something else in the HR office regarding that form that we signed?" Only by taking that affirmative step—not to simply read what was given (which is a natural impulse and, often, a legal presumption), but to remember, locate, and obtain something—would an employee ever come across language explaining that arbitration is mandatory and binding, and that working constitutes acceptance of that offer. Williams v. Gen. Elec., 13 F. Supp. 3d 1176 (N.D. Ala. 2014)