# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAVA LEZELL and MORDECHAI PALACE, on behalf of themselves and all other similarly situated consumers,<br><br>Plaintiffs,<br><br>v.<br><br>USAA SAVINGS BANK and USAA FEDERAL SAVINGS BANK,<br><br>Defendants. | No. 1:14-cv-05483-FB-VVP |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO COMPEL ARBITRATION

February 12, 2016

/s/ Peter Breslauer
Erin C. Dougherty
MONTGOMERY MCCRACKEN
 WALKER & RHOADS LLP
437 Madison Ave., 29th Fl.
New York, NY 10022
Tel: (212) 551-7717
Fax: (212) 599-1759

Peter Breslauer
MONTGOMERY MCCRACKEN
 WALKER & RHOADS LLP
123 S. Broad St., 24th Fl.
Philadelphia, PA 19109-1029
Tel.  (215) 772-7271
Fax: (215) 731-3733

ATTORNEYS FOR DEFENDANTS
USAA SAVINGS BANK AND USAA FEDERAL
SAVINGS BANK

## **TABLE OF CONTENTS**

**Page**

I.   FACTUAL AND PROCEDURAL BACKGROUND ……………………………. 1

II.  ARGUMENT……………………………………………………………………….4

    A.   Arbitration Agreements Like Those In This Case Are
         Valid And Enforceable Under The Federal Arbitration Act………………. 4

    B.   Plaintiffs Are Bound By A Valid And Enforceable
         Agreement To Arbitrate Their Claims…………………………………...9

III. CONCLUSION ………………………………………………………………13

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Defendants, USAA Savings Bank ("USAA SB") and USAA Federal Savings Bank ("USAA FSB" and collectively, with USAA SB, "USAA"), submit this memorandum of law in support of their motion to compel arbitration of Plaintiffs' Telephone Consumer Protection Act case. The printed terms that Plaintiffs received when they opened each of their four USAA SB credit card accounts included arbitration agreements that specifically cover any disputes over collection of their credit card debt. Plaintiffs agreed to those terms upon use of their cards.

In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011), the Supreme Court reaffirmed the longstanding "national policy favoring arbitration" under the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Since *Concepcion*, courts have routinely upheld arbitration provisions in credit card agreements and other consumer contracts. There is nothing about the arbitration clauses in Plaintiffs' credit card agreements, or the manner by which Plaintiffs agreed to them, that stands in the way of enforcement here. The Court should order Plaintiffs to proceed in arbitration.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs commenced this proposed class action on September 18, 2014 and served USAA with process on January 28, 2015. *See* Compl. (ECF 1); Stipulation (ECF 6). In their Complaint, and later their Amended Complaint, Plaintiffs alleged that USAA violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by using an automatic telephone dialing system to call their cell phone. Compl. ¶¶ 10 & 12; Am. Compl. ¶¶ 13 & 19 (ECF 12). Plaintiffs further alleged these calls "involve[d] a consumer debt" that USAA "sought to collect from the Plaintiffs." Compl. ¶ 3; Am. Compl. ¶ 3.

On March 19, 2015, USAA requested a pre-motion conference to move to compel

1

arbitration.  *See* ECF 9.  In its pre-motion letter, USAA explained that Plaintiff Lezell's claim was subject to a valid agreement to arbitrate contained in an addendum incorporated in her Credit Card Agreement with USAA (at the time only Plaintiff Lezell had sued).  The Credit Card Agreement and Arbitration Addendum provided that in accepting and using her credit card, Plaintiff Lezell agreed to arbitration of any pre-existing, present, or future claims relating to, among other things, her "[a]ccount balance or any billing or collections matters relating to [her] account" and "[a]ny other matters relating to [her] Account or [her] past, present, or future relationship with us[.]"  *Id*. at 2.  Magistrate Judge Pohorelsky held an initial conference on March 26, 2015, and stayed all discovery pending resolution of the arbitration motion.  *See* ECF 14.

Plaintiffs filed the Amended Complaint a few hours after the initial conference, adding Plaintiff Palace (Ms. Lezell's husband), and USAA renewed its pre-motion conference request on April 8, 2015.  *See* ECF 19.  The Court held the pre-motion conference on June 25, 2015, and initially set the arbitration issue for a hearing on September 4, 2014.  After Plaintiffs served a subpoena on a cell carrier, to which USAA objected because discovery was stayed, Plaintiffs sought the Court's approval of that subpoena, and also leave to take discovery to prepare for the hearing on the arbitration issue.  *See* ECF 20.  USAA consented to Plaintiffs' request for leave, provided that discovery was limited to Plaintiffs' agreement to arbitrate.  *See* ECF 22.  On July 21, 2015, Magistrate Judge Pohorelsky directed Plaintiffs to withdraw the subpoena, but entered a limited modification of the discovery stay to permit "discovery related to the hearing on the defendants' motion to compel arbitration."  *See* ECF 23.

Plaintiffs served a large number of discovery requests:  notices of at least seven depositions, each containing a document request; fourteen interrogatories; and twenty-eight

2

additional document requests.  *See* ECF 28-2 & 28-9 to 28-14.  USAA objected to much of this discovery because it exceeded the limited discovery Magistrate Judge Pohorelsky authorized, but served verified interrogatory answers and responsive documents relating to the arbitration issue.[1]  The interrogatory answers and documents that USAA served established the following facts that demonstrate that Plaintiffs are bound to arbitrate their claims:

- Plaintiffs had four credit card accounts with USAA. *See* Defendants' Objections and Responses to Plaintiffs' First Discovery Requests ("Defs' Resp."), at 4-5, Breslauer Decl. Ex. A;[2] Mathis Decl. at Exs. A-D.[3]

- USAA sent Plaintiffs' credit cards to them by first-class mail in accordance with USAA's standard practice, and the cards were accompanied in the same envelope by the applicable USAA Credit Card Agreements and Arbitration Addendums.  *See* Defs' Resp. at 5-6; Mathis Decl. Ex. B at 1 & Ex. C at 1.

- The cards for the earlier two accounts were accompanied by one form of the Credit Card Agreement and Arbitration Addendum documents; the cards for the later two accounts were accompanied by newer versions of those documents.  *See* Mathis Decl. Exs. E-H.

---

[1] Plaintiffs subsequently moved to compel responses to the portions of the discovery to which USAA had objected.  After briefing and oral argument, Magistrate Judge Kuo denied Plaintiffs' motion in its entirety on December 8, 2015 (ECF 38).

[2] The Declaration of Peter Breslauer, filed contemporaneously with this Memorandum, attaches the portions of Defendants' Objections and Responses to Plaintiffs' First Discovery Requests cited in this Memorandum, and a letter to Plaintiffs' counsel that accompanied documents that Defendants produced in response to Plaintiffs' First Discovery Requests.

[3] The Declaration of Diane Mathis, filed contemporaneously with this Memorandum, authenticates and attaches the documents that Defendants produced in response to Plaintiffs' First Discovery Requests.  USAA has redacted from those documents non-material information from Plaintiffs' account application records, including information obtained from credit reporting bureaus during the account approval process and other personal financial information.

3

- The Credit Card Agreements expressly incorporated the terms of the Arbitration Addendums, and became effective when Plaintiffs used the credit cards. *See* USAA-LEZELL-00095, Mathis Decl. Ex. E, at ¶ 1; USAA-LEZELL-00102, Mathis Decl. Ex. G, at Parts A(2) & A(3).

- The Arbitration Addendums, which were separate documents exclusively devoted to describing the terms under which Plaintiffs agreed to arbitrate, apply to the claims that Plaintiffs allege, which relate to collection efforts on their credit card accounts. *See* USAA-LEZELL-00097 to 00098, Mathis Decl. Ex. F, at 1-2; USAA-LEZELL-00123 to 00124, Mathis Decl. Ex. H, at Part A-2; Am. Compl. ¶¶ 3, 9, 11.

- When USAA began using the newer versions of the Credit Card Agreement and Arbitration Addendum in 2010, it sent a notice to Plaintiffs informing them that the newer versions now applied to their first two accounts. USAA included the newer versions of the Credit Card Agreement and Arbitration Addendum with the notice. USAA-LEZELL-00125, Mathis Decl. Ex. I; USAA-LEZELL-00127 to 00150 & USAA-LEZELL-00151 to 00152, Mathis Decl. Exs. J & K

In brief, upon use of their credit cards, Plaintiffs agreed to arbitrate any claims arising from collection efforts on their accounts. The Court should accordingly direct this case to arbitration.

## II.  ARGUMENT

### A.  Arbitration Agreements Like Those In This Case Are Valid And Enforceable Under The Federal Arbitration Act.

The sole issue before the Court is whether Plaintiffs are bound by the arbitration

4

addendums of their USAA credit card agreements. USAA's responses to Plaintiffs' discovery directly addressed that issue and established that Plaintiffs are obligated to arbitrate their dispute.

In *Concepcion*, the Supreme Court reaffirmed the "national policy favoring arbitration" under the Federal Arbitration Act, and upheld an arbitration clause in a form consumer contract that, like the arbitration agreement here, contained a class action waiver. *Concepcion*, 563 U.S. at 345-46, 352. In *Concepcion*, two plaintiffs filed a proposed class action in federal court in California, alleging that they had been unlawfully charged sales tax on the value of cell phones whose price AT&T had represented to be free. AT&T moved to enforce the arbitration provision in its contract with plaintiffs, but the district court denied the motion on grounds that the California Supreme Court had ruled that barring a consumer from bringing a class action rendered a contract unconscionable and unenforceable. *Id.* at 336-38 (citing *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005)). The Ninth Circuit affirmed the district court, and also held that the Federal Arbitration Act ("FAA") did not preempt California's "*Discover Bank* rule." *Id.* at 337-38.

On review, the United States Supreme Court reversed the Ninth Circuit, holding that the *Discover Bank* rule "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of Congress when it passed the FAA. *Id.* at 343. The Supreme Court began with the language of section 2 of the FAA:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

In construing section 2 of the FAA, the Supreme Court emphasized that it "reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 563 U.S. at 339 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010)). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 44 (2006); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

The Supreme Court then focused on the last part of section 2, which "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 563 U.S. at 339. The Court explained that "[t]his saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 483, 492-93 n.9 (1987)). Because California's *Discover Bank* rule was in the latter category of defenses – it "appl[ied] only to arbitration or that derive[d] its meaning from the fact that an agreement to arbitrate is at issue" – it stood "as an obstacle to the accomplishment and execution of the full purposes and objectives" of Congress, was preempted by the FAA, and could not prevent enforcement of the arbitration provision in the AT&T contract. *Concepcion*, 563 U.S. at 352.

Since the Supreme Court's ruling in *Concepcion*, courts have routinely upheld arbitration agreements in consumer contracts, including arbitration agreements in credit card contracts that

6

also waive the cardholder's ability to file a class action, including a class action asserting TCPA claims.  *See, e.g.*, *Salerno v. Credit One Bank, NA*, 2015 WL 6554977, at *3-6 (W.D.N.Y. Oct. 29, 2015) (staying case and ordering arbitration of TCPA claims per credit card agreement); *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473-75 (S.D.N.Y. 2013) (compelling arbitration pursuant to terms of credit card agreement); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1186 (S.D. Cal. 2013) (granting, in TCPA case, "motion to compel arbitration of Plaintiffs' claims in separate, individual arbitrations, in accordance with agreements requiring individual arbitration of all claims related to Plaintiffs' consumer credit accounts held by Defendants"); *Montgomery v. Credit One Bank*, NA, 848 F. Supp. 2d 601, 608 (S.D. W. Va. 2012) (granting motion to compel arbitration of TCPA claims arising from attempts to collect credit card debt).

The October 29, 2015 opinion of the Western District of New York in *Salerno*, on facts nearly identical to those here, is illustrative.  As in this case, the plaintiff in *Salerno* filed a proposed class action alleging TCPA claims in connection with her credit card account.  *Salerno*, 2015 WL 6554977, at *1.  As here, the defendant bank mailed the credit card to the plaintiff at the address she provided with her application.  *Id*.  Credit One's standard policy, like USAA's, was to include a copy of the cardholder agreement, including the arbitration clause, in the same envelope as the credit card.  *Id*.  And just as in this case, the plaintiff activated and used the card.  *Id.* at *3.

When Credit One moved to compel arbitration, Ms. Salerno argued she did not recall receiving the agreement.  *Id*.  But the court "rejected outright" her claim, noting that "regular use of the credit card constitutes sufficient evidence of the card user's consent to the terms of the

7

agreement governing the account." *Id.* at *4 (citing cases).[4] Ms. Salerno had used the card immediately upon receipt and made payments for its use – which constituted her agreement to the terms. *Id.* And the defendant's sworn testimony "provide[d] compelling circumstantial evidence of Credit One's compliance with its customary policy to enclose a copy of the Cardholder Agreement within the same envelope used to mail the customer the credit card for activation." *Id.* (citing *Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 463 (S.D.N.Y. 2004) ("evidence of proper mailing gives rise to a rebuttable presumption of receipt;" "[p]roof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business") (quoting *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 917-18 (N.D. Tex. 2000)); *see also Marsh*, 103 F. Supp. 2d at 919 (mere denial of receipt insufficient to overcome presumption of receipt) (citing cases). The court granted Credit One Bank's motion to compel arbitration. *See Salerno*, 2015 WL 6554977, at *3-6.

As explained below, USAA has established all of the requirements to compel arbitration of Plaintiffs' dispute. Plaintiffs received an Arbitration Addendum with each of their credit cards, which became enforceable when they used their cards. Their claims plainly fall within the scope of the Arbitration Addendums. The facts of this case are materially the same as in *Salerno* and the other cases USAA has cited above, and the Court should accordingly direct Plaintiffs to proceed in arbitration.

---

[4] *Salerno* was decided under New York law. 2015 WL 6554977, at *4. USAA SB is located in Nevada. USAA-LEZELL-00095, Mathis Decl. Ex. E (stating "USAA Savings Bank, Las Vegas, Nevada). Both of Plaintiffs' Arbitration Agreements contain Nevada choice-of-law clauses, and Nevada law is to the same effect: "A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card." NEV. REV. STAT. § 97A.140(b)(2).

8

B. **<u>Plaintiffs Are Bound By A Valid And Enforceable Agreement To Arbitrate Their Claims.</u>**

USAA's verified answers to Plaintiffs' Interrogatories, and the authenticated documents that it produced in response to Plaintiffs' Document Requests, establish that Plaintiffs are bound to arbitrate their dispute.

*First*, in its Answer to Plaintiffs' Interrogatory No. 1, USAA explained that Plaintiffs had four USAA credit card accounts, each of which they applied for by telephone:

- The first account that Plaintiffs opened was a USAA MasterCard account that Ms. Lezell applied for. Its account number at opening ended in "9610," but after replacement of lost or stolen cards, it ultimately had an account number ending in "2474" (the "2474 account"). USAA approved this account on May 17, 2007.

- Mr. Palace applied for Plaintiffs' second account, a USAA Cash Rewards American Express Card ending in "4297" (the "4297 Account"). USAA approved this account on January 16, 2008.

- Ms. Lezell applied for Plaintiffs' third account, a USAA American Express Card ending in "7729" (the "7729 Account"). USAA approved this account on February 5, 2010.

- Mr. Palace applied for Plaintiffs' fourth account, a USAA MasterCard ending in "2978" (the "2978 Account"). USAA approved this account on December 31, 2010.

*See* Defs' Resp. at 4-5, Breslauer Decl. Ex. A.

USAA also produced printouts of the application information for each of Plaintiffs' accounts as maintained in the ordinary course of its business, which also identify the applicants,

9

the account numbers (redacted to show only the last four digits), and the date on which the applications were processed and approved. *See* Mathis Decl. at Exs. A-D.

*Second*, in its Answer to Plaintiffs' Interrogatory No. 2, USAA explained that its "standard practice is to send, by first class mail, the applicable Credit Card Agreement and Arbitration Addendum in the same envelope containing the credit card(s) upon the initial opening of the account." *See* Defs' Resp. at 5-6, Breslauer Decl. Ex. A. This meant that "[a]s to each of Plaintiffs' accounts, the date on which Plaintiffs received the Credit Card Agreement and Arbitration Addendum was therefore on or before the date on which Plaintiff initially used the card(s)." *Id.* Similarly, the account application records that USAA produced show that USAA delivers its credit card packets by first-class mail. *See* Mathis Decl. Ex. B at 1 & Ex. C at 1 ("Card Features" sections).

*Third*, USAA produced the Credit Card Agreements and Arbitration Addendums applicable to Plaintiffs' four accounts. The Credit Card Agreement and Arbitration Addendum initially applicable to the 2474 and 4297 accounts are identified and attached as Exhibits E and F to the Mathis Declaration.[5] USAA identified and produced these documents to Plaintiffs in response to their Document Requests on September 29, 2015. *See* Letter of P. Breslauer to A. Fishbein, Sept. 29, 2015, Breslauer Decl. Ex. B. The Credit Card Agreement and Arbitration Addendum initially applicable to the 7729 and 2978 accounts are identified and attached as Exhibits G and H to the Mathis Declaration, and USAA also identified and produced these documents to Plaintiffs in response to their Document Requests on September 28, 2015, Breslauer Decl. Ex. B.

*Fourth*, both Credit Card Agreements expressly incorporated the terms of the

---

[5] In paragraphs 6 and 10 of the Mathis Declaration, the 2474 account is identified as the

10

corresponding Arbitration Addendums:

- The earlier of the two Credit Card Agreements notified Plaintiffs in the first paragraph that it "consists of this document, the Credit Card Agreement Supplement, Schedule A attached or sent with this document, and any other documents that we may refer to as part of this Agreement." *See* USAA-LEZELL-00095, Mathis Decl. Ex. E, at ¶ 1.  It states unambiguously, in a section entitled "**Arbitration**," that "This Agreement has an Arbitration Addendum which contains an arbitration clause that is part of and incorporated into this Agreement."  *See id.* ¶ 39 (emphasis in original).

- The later of the two Credit Card Agreements also notified Plaintiffs, on the first page of the "Universal Terms and Conditions," that it "consists of the following documents:  (a) the *Universal Terms and Conditions* that you are reading now; (b) the *Pricing Schedule*; (c) the *Arbitration Addendum*; and (d) any other document that we provide to you that indicates it is part of the USAA Credit Card Agreement."  *See*  USAA-LEZELL-00102, Mathis Decl. Ex. G, at Part A(2) (emphasis in original).

Both Credit Card Agreements, moreover, provided that they become effective upon the first use of the cards or, at the latest, on a specified number of days after receipt or opening of the account:

- The earlier of the two Credit Card Agreements provided, in the first paragraph, that if it "is a new account, this Agreement becomes effective upon either:  the first use of your Account; or, if you do not use your Account

---

"9610 account," according to the ultimate account number assigned to the account.

11

>within three days after we deliver this Agreement to you, by not closing your Account within that three-day period." See USAA-LEZELL-00095, Mathis Decl. Ex. E, at ¶ 1.

- The later of the two Credit Card Agreements provided, on the first page of the "Universal Terms and Conditions," that "this Agreement becomes effective ten (1) days after the date on which the Account was opened or on the date of the first Account transaction, whichever date is earlier." See USAA-LEZELL-00102, Mathis Decl. Ex. G, at Part A(3).[6]

*Fifth*, Plaintiffs' claims are plainly within the scope of the corresponding Arbitration *Addendums*. "Federal policy requires courts 'to construe arbitration clauses as broadly as possible . . . ,' *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995), and the agreement to arbitrate should be enforced 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)." *Salerno*, 2015 WL 6554977, at *3.

Here, both of the Arbitration Addendums provide that covered claims include "[y]our Account balance or any billing or collections matters relating to your Account" and "[a]ny other matters relating to your Account or your past, present, or future relationship with us." Moreover, the arbitration agreement was not "buried" inside the Credit Card Agreements, but was in freestanding documents, entitled "USAA Credit Card Agreement Arbitration Addendum," that were enclosed with the cards, called out in the Agreements, and exclusively devoted to describing the terms of Plaintiffs' agreement to arbitrate. See USAA-LEZELL-00097 to 00098,

---

[6] As stated *supra* note 4, under Nevada law Plaintiffs are deemed to have consented upon

Mathis Decl. Ex. F, at 1-2 ("**CLAIMS COVERED BY ARBITRATION**"); USAA-LEZELL-00123 to 00124, Mathis Decl. Ex. H, at Part A-2 ("**WHAT IS A COVERED CLAIM?**") (emphasis in original). Plaintiffs' TCPA claims arise from and relate to USAA's collection efforts on their credit card accounts, *see* Am. Compl. ¶¶ 3, 9, 11, and are plainly within the scope of the claims covered by the Arbitration Addendums.

*Finally*, in 2010, USAA sent the newer versions of the Credit Card Agreement and Arbitration Addendum to Plaintiffs. See USAA-LEZELL-00125, Mathis Decl. Ex. I (notice); USAA-LEZELL-00127 to 00150 (Credit Card Agreement) & USAA-LEZELL-00151 to 00152 (Arbitration Addendum), Mathis Decl. Exs. J & K.

In summary, Plaintiffs received a valid and enforceable Credit Card Agreement and Arbitration Addendum with the credit cards for each of their four accounts. The Arbitration Addendum was expressly incorporated into the Credit Card Agreement, and laid out, in a separate document, the terms of Plaintiffs' agreement to arbitrate. Plaintiffs' claims, which arise out of USAA's efforts to collect their credit card debt, are squarely within the scope of the Arbitration Addendums. Under *Concepcion* and its progeny, the Credit Card Agreements and Arbitration Addendums are plainly enforceable.

### III.  CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Compel Arbitration, stay all proceedings in this action, and direct Plaintiffs to arbitrate their claims.

---

use of the credit cards.

| | |
|---|---|
| February 12, 2016 | Respectfully submitted, |
| | /s/ Peter Breslauer |
| | Erin C. Dougherty |
| | MONTGOMERY MCCRACKEN |
| |  WALKER & RHOADS LLP |
| | 437 Madison Ave., 29th Fl. |
| | New York, NY 10022 |
| | Tel: (212) 551-7717 |
| | Fax: (212) 599-1759 |
| | |
| | Peter Breslauer |
| | MONTGOMERY MCCRACKEN |
| |  WALKER & RHOADS LLP |
| | 123 S. Broad St., 24th Fl. |
| | Philadelphia, PA 19109-1029 |
| | Tel.  (215) 772-7271 |
| | Fax: (215) 731-3733 |
| | |
| | ATTORNEYS FOR DEFENDANTS |
| | USAA SAVINGS BANK AND USAA FEDERAL SAVINGS BANK |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 12, 2016, I electronically filed the foregoing Memorandum of Law in Support of Defendants' Motion to Compel Arbitration using the Court's CM/ECF system, which will send notification of the filing to counsel of record.

      /s/ *Peter Breslauer*